UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

VICKI LEE EWALD,

        Plaintiff,

v.                             Case No:  2:15-cv-291-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

## OPINION AND ORDER

Plaintiff Vicki Lee Ewald appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI").   For the reasons discussed herein, the Commissioner's decision is **AFFIRMED**.

### I.    Issues on Appeal

Plaintiff raises two interrelated issues on appeal:[1]  (1) whether Administrative Law Judge M. Dwight Evans (the "ALJ") applied the proper legal standard at step two concerning the severity of Plaintiff's physical and mental limitations; and in doing so whether the ALJ's residual functional capacity ("RFC") properly accounted for Plaintiff's nonsevere limitations; and (2) whether substantial evidence supports the ALJ's credibility determination. Because the decision of the Commissioner is

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."), cited in *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013).

supported by substantial evidence and Plaintiff has not shown any reversible error, the Court will affirm the ALJ's decision on all issues.

## II.   Procedural History and Summary of the ALJ's Decision

On June 21, 2011, Plaintiff filed applications for a period of DIB and SSI alleging that she became disabled and unable to work on June 21, 2011.   Tr. 30, 83, 179-92.   The Social Security Administration denied her claim initially and upon reconsideration.   Tr. 111-23, 128-39.   Plaintiff requested and received a hearing before an ALJ on October 28, 2013, during which she was represented by an attorney. Tr. 27-64, 140-41.   Plaintiff and vocational expert ("VE") Donna Taylor testified at the hearing.   Tr. 27-64.

On December 20, 2013, the ALJ issued a decision finding that Plaintiff was not disabled and denied her claim.   Tr. 10-21.   The ALJ first determined that Plaintiff met the insured status requirement of the Social Security Act through December 31, 2014.   Tr. 15.   At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 21, 2011, the alleged onset date.   *Id.*   At step two, the ALJ determined that Plaintiff has the severe impairment of diabetes mellitus.   *Id.*   In doing so, the ALJ specifically considered and discussed Plaintiff's medical records concerning her lower back, neck, knee and foot impairments and her mental impairment of depression/anxiety.   Tr. 15-17.   At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . ."   Tr. 17-18.

Taking into account the effects of all of Plaintiff's impairments, severe and nonsevere, the ALJ determined that Plaintiff has the RFC to:

> lift and carry ten pounds occasionally and less than ten pounds frequently.   Claimant can stand or walk for up to two hours in an eight-hour workday and sit for up to six hours in an eight-hour workday. Claimant is not limited with respect to pushing and pulling. Claimant is limited to occasionally (up to one third of the workday) stooping, kneeling, crouching, and crawling. Claimant may only occasionally work in proximity to mechanical parts such as large machines, hazardous machinery, or be exposed to unprotected heights. Claimant is not limited with respect to her ability to climb ramps and stairs, balance, or be exposed to extreme cold, extreme heat, wetness, humidity, vibrations, noise, or atmospheric conditions such as fumes, odors, dusts, gases, or poor ventilation. Claimant must never climb ladders, ropes, or scaffolds.

Tr. 18.   The ALJ found that Plaintiff's impairments are not as severe or limiting as alleged, and her statements concerning the intensity, persistence and limiting effects of the symptoms are not fully credible for reasons explained in the opinion.   Tr. 19. The ALJ found that Plaintiff was able to perform some of her past relevant work as an accounts receivable clerk, as generally performed; a medical billing clerk, as actually and generally performed, and an accounts receivable manager, as generally performed.   Tr. 20.   The ALJ noted this work "does not require the performance of work-related activities precluded by the claimant's residual functional capacity." *Id.* Thus, the ALJ found Plaintiff was not disabled and denied her claim.   Tr. 20-21.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council which was denied.   Tr. 1-3.   Accordingly, the ALJ's December 13, 2013 decision is the final decision of the Commissioner.   Plaintiff filed an appeal in this Court on May 7, 2015.   Doc. 1.

### III.    Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to either result in death or last for a continuous period of not less than twelve months.    42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).    The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.    *See* 20 C.F.R. §§ 404.1520; 416.920.    The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner.  *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).    The Eleventh Circuit has noted that the Commissioner's burden at step five is temporary, because "[i]f the Commissioner presents evidence that other work exists in significant numbers in the national economy, 'to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists.'"    *Atha*, 616 F. App'x at 933 (citing *Doughty v. Apfel*, 245 F.3d 1274, 1278 n. 2 (11th Cir. 2001)).    The scope of this

Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account

evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Commissioner*, 2015 WL 1453364, at *2 (11th Cir. 2015) (citing *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971)).

## IV. Discussion

### a. Whether the ALJ applied the proper legal standard at step two concerning the severity of Plaintiff's physical and mental limitations and properly considered these impairments in the RFC.

Plaintiff first states that the ALJ applied an incorrect standard when he evaluated whether Plaintiff's impairments were severe "because he invented his own extra-legal standard, requiring that she prove 'material worsening' subsequent to some earlier time period." Doc. 14 at 5. Further, Plaintiff argues that this error was compounded because it negatively impacted the RFC and credibility assessments when the ALJ did not consider the nonsevere impairments. *Id.* at 8. The Commissioner states that substantial evidence supports the ALJ's decision at step two that Plaintiff's depression; back, neck and knee pain and diabetic neuropathy in her feet were not severe; and, in any event, the ALJ "satisfied the threshold inquiry at step two" in finding Plaintiff's diabetes to be severe and proceeded through the remainder of the evaluation process. Doc. 15 at 6-12, Tr. 15. Further, the Commissioner responds that the ALJ considered both Plaintiff's severe and

nonsevere impairments when concluding Plaintiff retained the ability to perform her past sedentary work.   Doc. 15 at 7.   The Court, having reviewed the record, the applicable law and the decision of the ALJ, agrees with the Commissioner on both issues.

At the second step in the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment.   20 C.F.R. § 404.1520(a)(4)(ii).   If the ALJ determines a claimant has a severe impairment, as here, the analysis moves to step three.   *See* 20 C.F.R. § 404.1520(a)(4).   Plaintiff bears the burden of establishing that her impairments are severe and prevent the performance of her past relevant work.   *Bowen v. Yuckert*, 482 U.S. 146 at 146 n.5 (1987).   A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to do basic work activities.   20 C.F.R. § 404.1520(c).   "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

This circuit holds that the ALJ's finding "of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).   This is because after proceeding beyond step two of the process, the ALJ must consider all of the claimant's impairments taken as a whole when

determining whether her impairments qualify as a disability (step three) and whether she can return to her past work (step four) or, if not, whether she can perform other work available in the national economy (step five). *Id., see* 20 C.F.R. § 404.15

When an impairment does not meet or equal a listed impairment at step three, as in this case, the ALJ will proceed to step four to assess and make a finding regarding the claimant's RFC based upon all the relevant medical and other evidence in the record. 20 C.F.R. § 404.1520(e). The RFC is the most that a claimant can do despite her limitations. *See* 20 C.F.R. § 404.1545(a); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. § 404.1545(a). The claimant's age, education, and work experience are considered in determining her RFC and whether she can return to his past relevant work, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite her impairments. *Phillips*, 357 F.3d at 1238; *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

Here, as noted above, the ALJ determined at step two that Plaintiff suffered from at least one severe impairment, diabetes mellitus. Tr. 15. He then proceeded through the sequential evaluation process, specifically discussing Plaintiff's records concerning her other alleged impairments before determining she had the ability to

perform her past relevant work as an accounts receivable clerk or manager or a medical billing clerk, each of which is considered sedentary work.[2]   *See* Tr. 15-20.

The undersigned has reviewed the record and concludes that substantial evidence supports the ALJ's decision not to include Plaintiff's depression, and her back, neck, knee and foot pain as severe impairments.   The Court also finds the ALJ applied the appropriate legal standard.   Furthermore, there was no error in the ALJ's finding at step two because he found one severe impairment and proceeded with the sequential evaluation process.   In both step two and when considering his RFC analysis, the ALJ accurately summarized all of the records concerning Plaintiff's nonsevere impairments, discussed below.   *See id.*   It is evident that the ALJ considered both Plaintiff's severe and nonsevere impairments when making his RFC determination.

(1)   Back, neck, and knee impairments.

The first medical records concerning Plaintiff's back pain were in 2009, prior to the alleged onset of Plaintiff's disability in June 2011.   Tr. 30, 274, 276-77.   On April 1, 2009, Plaintiff visited Allen C. Tafel, M.D., of Orthopedic Specialists of SW

---

[2] The regulations provide:   "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.   Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."   20 C.F.R. 404.1567(a).   Social Security Ruling 83-10 elaborates on § 404.1567(a) by providing that "'occasionally' means occurring from very little up to one-third of the time," and that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." *Kelley v. Apfel*, 185 F.3d 1211, 1214 n.2 (11th Cir. 1999).

Florida. Tr. 277. Dr. Tafel performed x-rays of Plaintiff's thoracic spine, which showed no evidence of degenerative changes or spondylolisthesis and very mild and subtle discogenic changes in her mid-thoracic spine. *Id.* A follow-up visit on April 30, 2009 showed Plaintiff was doing better, although not pain-free. Tr. 276. Dr. Tafel noted the pain seemed to be localized in her left lumbar region, which worsened with prolonged sitting and caused difficulty sleeping at night. *Id.* He further noted that Plaintiff was scheduled to go on a trip to Germany, which would require extensive travelling and sitting, and recommended epidural injections into her left lumbar region. *Id.* The injections were performed on May 6, 2009. Tr. 274. On January 24, 2011, Plaintiff was treated by Dr. Lana Perkins, D.C., for her back and neck, and Dr. Perkins noted improvement. Tr. 385.

The ALJ reviewed Plaintiff's medical records and noted that Plaintiff has a history of lower back and neck pains dating back to at least 2000, yet she continued to work until November 2009. Tr. 15, 221. It was during a consultative examination in September 2011 with Dr. Lance Cassell, M.D., that Plaintiff complained of neck and lower back pains dating back twenty years and bilateral knee pain from fifteen years prior to that time. Tr. 15-16, 388. Plaintiff told Dr. Cassell that she cooks daily; cleans when possible, limited by her back pain; does laundry weekly and shops four times per week. Tr. 389. She also showers and dresses herself without any physical assistance, watches television, listens to the radio and reads. *Id.* Plaintiff shops for groceries and socializes with friends. *Id.* Dr. Cassell's examination revealed that Plaintiff had a full range of motion in her spine

and extremities; her motor strength was full and there was no sensory deficit or edema.   Tr. 390-91.

Moreover, the records of Plaintiff's primary care physician Adriana M. Loukanova, M.D., show few to mild issues with Plaintiff's back, neck and knee pain. In March 2009, Plaintiff reported no back complaints, joint aches, pains, swelling or limited range of motion.   Tr. 361.   Her neck and spine showed full range of motion. Tr. 362.   A June 21, 2010 visit indicated that Plaintiff was "negative" for myalgia and back pain, and she exhibited normal range of motion in her neck.   Tr. 366-67. Dr. Loukanova noted Plaintiff had been counseled on healthy eating habits and need for weight loss.   Tr. 368.   On each of two visits in August and October 2011 Plaintiff reported back pain, but on both those occasions Dr. Loukanova observed Plaintiff had a normal range of motion and a supple neck.   Tr. 458-59, 464.   A visit in August 2012 revealed no back or neck pain and a normal range of motion and supple neck. Tr. 453-54.   Plaintiff was once again counseled to work on a healthy diet and exercise and begin a weight management program.   Tr. 455.

Upon review of the record, the Court finds substantial evidence supports the ALJ's conclusion that Plaintiff's reported back, neck and knee impairments were not severe and did not cause work-related limitations that are not accounted for in the ALJ's RFC.   Further, the Court disagrees that the ALJ "invented" his own legal standard, as Plaintiff asserts.   *See* Doc. 15 at 6.   Instead, the ALJ noted Plaintiff had been able to work in spite of these long-standing issues, which supports his finding that they were not disabling.   *See Ellison v. Barnhart*, 355 F.3d 1272, 1275

(11th Cir. 2003) (affirming ALJ's analysis where ALJ discredited claimant's allegations, in part, because claimant worked for several years in spite of his impairments). Both Dr. Tafel and Dr. Perkins noted improvements in Plaintiff's back and neck pain (Tr. 276, 385), and Plaintiff's primary care physician, Dr. Loukanova similarly reported normal range of motion and supple neck. See Tr. 458-59, 464, 453-54. The examination of consultative physician Dr. Cassell also revealed that Plaintiff had a full range of motion in her spine and extremities and her motor strength was full. Tr. 390-91. Furthermore, any issues from Plaintiff's back and neck impairments were accounted for in the ALJ's RFC, which limited her to a range of sedentary work.

(2) <u>Foot and Ankle Impairments</u>

As noted by the Commissioner (Doc. 15 at 9) and contrary to Plaintiff's assertions (Doc. 14 at 10), the ALJ extensively discussed Plaintiff's diabetic neuropathy and related foot impairments both at step two and in her RFC assessment. Tr. 15-16, 18-19. The records show Plaintiff initially sought specialized treatment for her foot impairments from podiatrist Ricardo P. Maribona, M.D., on November 6, 2009. Tr. 279. She came to him complaining of thickened, elongated, fungal toe nails and complaints of diabetic neuropathy, which resulted in pain, numbness and tingling to her feet. *Id.* Plaintiff reported that she had been experiencing the numbness, burning and tingling sensations in both feet for four years, and noticed changes to her feet at least as far back as 2000, stating:

> Back in 2000 I noticed the changes in my feet after I had neuroma surgery in both feet with Dr. D. (uncertain of name) Then in 2002 Dr.

> John Adler did the neuroma surgery again to the left foot. None of these
> doctors ever clearly stated I had neuropathy. Then in 2005 Dr. Ed Davis
> told me I was diabetic and I had neuropathy. I am not seeing Dr. Davis
> anymore now I am seeing Dr. A. Loukanova and she give me tramadol
> because Lyrica was to [sic] strong.

*Id.*  Plaintiff next visited Dr. Maribona twice more, on October 4 and 7, 2011.  Tr.

396, 401.   In the October 7, 2011 visit, Plaintiff reported that her left foot pain had

improved "a great deal" with an injection, and she had only mild pain following

treatment.  Tr. 396.  She reported the pain in her right foot to be waxing and

waning, at times moderate, which was aggravated by standing and walking but

improved with rest.   *Id.*

Referring to the records of Dr. Maribona and related medical records, the ALJ

noted that nerve testing conducted in 2009 showed abnormalities in both feet, and

Plaintiff was diagnosed with diabetes mellitus, hypertension and

hypercholesterolemia in March 2009 and received medication for these issues.  *Id.*

The ALJ further noted that Plaintiff had reported worsening bilateral foot pain and

neuropathy, which also were present since 2000.   Tr. 16, 388-89.

In discussing the Plaintiff's RFC, he referred to the October 31, 2011 opinion

of consultative physician Walter Harris, M.D.   Tr. 20, 104-06.   Dr. Harris reviewed

the record and found Plaintiff could perform a range of sedentary work.  Tr.  104-

06.   Dr. Harris explained that Plaintiff's lumbar x-rays revealed mild lumbar

scoliosis and mild degenerative changes, and there were no noted sensory deficits.

Tr. 106.   While he noted Plaintiff's gait was "somewhat slow," she was able to walk

on her heels and her stance was normal.   *Id.*   Dr. Harris opined that Plaintiff could

stand or walk up to two hours and sit about six hours in an 8-hour workday.   Tr. 105.
He noted Plaintiff had postural limitations due to her "mild" lumbar issues, and his
RFC limited her to only occasionally stooping, kneeling, crouching and crawling and
never climbing ladders, ropes or scaffolds.   *Id.*

The ALJ gave Dr. Harris' opinion significant weight, as he found it to be most
consistent with the medical record, including treatment notes, diagnostic testing and
Plaintiff's activities of daily living.   Tr. 20.   Similarly, Dr. Cassel noted Plaintiff's
complaints of bilateral foot neuropathy, yet he observed Plaintiff cooks daily, cleans
when possible (limited by her back pain), walks with a "somewhat slow" gait, uses no
assistive device and has a normal stance.   Tr. 390.   He also noted that Plaintiff has
a full range of motion in her ankles.   *Id.*   She was able to get on and off the
examination table with no assistance.   *Id.*

Upon review of the ALJ's decision, the Court finds no error either in his
determination that Plaintiff's foot impairments were nonsevere or in his RFC, which
properly accounted for such issues by limiting Plaintiff to a range of sedentary work.
His opinion is supported by substantial evidence in the record, as discussed.

(3) <u>Depression</u>.

At step two, the ALJ found that Plaintiff's depression does not cause more than
minimal limitation in her ability to perform basic mental work activities and thus is
non severe.   Tr. 17.   In making his finding, the ALJ considered the four broad
functional areas set out in the regulations for evaluating mental disorders and in

section 12.00C of the Listing of Impairments, the so-called "paragraph B" criteria.[3] In the first functional area of daily living, the ALJ determined that Plaintiff has no limitation. *Id.* He noted that Plaintiff is able to take care of her personal needs independently and performs household chores for her and her husband. *Id.* In the next functional area, social functioning, the ALJ also found that Plaintiff has no limitation. *Id.* The ALJ observed that in multiple reports Plaintiff is able to shop in public within her physical abilities and regularly socializes with friends and neighbors. *Id.* In the third functional area of concentration, persistence or pace, the ALJ likewise found that Plaintiff has no limitation. *Id.* The ALJ discussed Plaintiff's ability to regularly read, write and manage a household, and noted any concentration difficulties appear related to times when Plaintiff is in acute pain. *Id.* In the fourth functional area of episodes of decompensation, the ALJ found that Plaintiff had experienced no episodes of decompensation of an extended duration. *Id.*

The Court finds substantial evidence support the ALJ's determination that her mental impairments are not severe and do not affect her ability to work, as set forth in the RFC. As noted by the ALJ, Plaintiff did not seek or receive any mental health treatment. Tr. 20. While the ALJ noted Plaintiff reported suffering from depression since 2000, records from her providers consistently observed Plaintiff to have normal mood and affect. Tr. 20. *See, e.g.,* Tr. 454, 459, 472 (Dr. Loukanova observing Plaintiff's mood and affect were normal and she displayed normal

---

[3] 20 C.F.R., Part 404, Subpart P. Appendix 1.

judgment); Tr. 391 (examination of Dr. Cassel showed Plaintiff with normal memory and affect); Tr. 91 (opinion of state agency psychological consultant, Dr. David Clay, also who opined that Plaintiff had no psychological limitation in daily activities, social functioning, and concentration, persistence or pace nor had she experienced any episodes of decompensation).   The ALJ's findings are consistent with the regulations, and the Court finds no error. *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

### b. *Whether substantial evidence supports the ALJ's credibility determination*

Plaintiff next alleges that ALJ failed to make a proper credibility determination as to Plaintiff's testimony because he mischaracterized evidence of record and impermissibly substituted his judgment for that of the medical providers. Doc. 14 at 11.   The Commissioner responds that the ALJ applied the correct legal standards and sufficiently articulated explicit and adequate reasons for discrediting Plaintiff's allegations.   Doc. 21 at 13.   The Commissioner further asserts that substantial evidence supports the ALJ's credibility finding, and the ALJ provided numerous reasons for finding Plaintiff to be not credible.   Doc. 15 at 12-13.   With respect to Plaintiff's credibility the ALJ summarized:

> In terms of the claimant's alleged diabetes and associated neuropathy and other symptoms, the undersigned finds that the claimant is not as limited as is alleged. A review of the medical record shows that claimant reported only intermittent symptoms and received intermittent care over the last several years. Claimant also frequently reported that her medication and treatment regimen adequately managed her symptoms. Claimant has not required any emergency treatment. Despite her condition, the record shows that the claimant functions adequately as the primary housekeeper and provider for her household. Of significant

note is the fact that claimant did not leave her prior position because of her medical condition but rather due to a change in management. Thereafter, she sought and applied for jobs showing that she believed she was able to engage in significant gainful activity. Throughout this time and for several years while she worked full time, claimant suffered from those same conditions as she does now. The medical evidence outlined above does not suggest significant worsening. These facts, combined with the claimant's high degree of daily activity and only intermittent care suggest that the claimant is not as limited as is alleged.

Tr. 19.

When assessing the credibility of subjective complaints, an ALJ considers: (1) evidence of an underlying medical condition; and (2) objective medical evidence either (a) confirming the severity of alleged symptoms, or (b) indicating that the medical condition could be reasonably expected to cause symptoms as severe as alleged. *See* 20 C.F.R. §§ 404.1529, 416.929; *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); *Wilson*, 284 F.3d at 1225-26. The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

In this case, the ALJ considered Plaintiff's claims with regard to both her alleged physical and mental impairments. Tr. 15-20. In terms of Plaintiff's pain

and physical impairments, the ALJ found that objective evidence and Plaintiff's treatment history did not support her allegations, which is proper for the ALJ to do. *Id.* *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (allowing an ALJ to consider objective medical evidence when assessing credibility); 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(vi) (allowing an ALJ to consider treatment a claimant uses for symptom relief).

The ALJ noted that Plaintiff had received intermittent care and reported only intermittent symptoms over the past several years. Tr. 19. Plaintiff disputes the validity of this finding and further points out that the record shows she had trouble affording medical care. Doc. 14 at 12. She further states: "Her financial situation was further compromised by the Commissioner's failure to render an ALJ Decision in her claim for more than two years from the time she requested a hearing." *Id.* The Commissioner responds that while she seeks to "blame the agency and her lack of resources for her intermittent care," the record reveals a nine-month gap in treatment in 2012 and a ten-month treatment gap in 2013. Doc. 15 at 14. As noted in a recent Eleventh Circuit opinion, citing to the court's published opinion in *Ellison*:

> [w]hen evaluating a claimant's statements regarding his symptoms and their functional effects, the ALJ may consider whether the level or frequency of treatment is consistent with the level of complaints. *See* Social Security Regulation ("S.S.R.") 96–7p at 7. Nonetheless, the ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanations that might explain the failure to seek or pursue treatment. *Id.* Thus, the ALJ must consider evidence showing that the claimant is unable to afford medical care before denying disability insurance benefits based upon the claimant's non-compliance with such care. *See Ellison,* 355 F.3d at 1275. Nonetheless, reversible error does not appear where the ALJ primarily

based her decision on factors other than non-compliance, and where the claimant's non-compliance was not a significant basis for the ALJ's denial of disability insurance benefits. *See id.* at 1275–76.

*Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012).   In this case, as in *Beegle* and *Ellison*, the ALJ did not base his decision on non-compliance with Plaintiff's treatment.   Here, as in *Ellison*, the ALJ based his credibility decision, in part, on the fact that Plaintiff worked for several years in spite of her impairments, among several other reasons noted by the ALJ.   Tr. 19; *see* 355 F.3d at 1275.   While Plaintiff had been experiencing her symptoms since at least 2000, she was able to work full time until November 2009.   Tr. 15-16, 19, 221, 388. Thus, it was not reversible error for the ALJ not to address Plaintiff's ability to pay when he considered the intermittent care she received.

A claimant's ability to work despite her impairments supports a finding that the impairments are not disabling.   *Ellison*, 355 F. 3d at 1275.   The ALJ also discussed that Plaintiff did not lose her job due to her impairments but was laid off because of company cost-cutting and management changes.   Tr. 19.   After she was laid off, she continued to apply for jobs.   Tr. 19, 36.   In such cases, courts have found that a claimant's allegations of total disability are inconsistent with, for example, receiving unemployment benefits where he held himself out as being able to work. *See Butler v. Comm'r of Soc. Sec.*, No. 11-cv-110, 2012 WL 628489, at *7 (M.D. Fla. Feb. 27, 2012) ("Plaintiff's allegations of total disability are inconsistent with his receipt of unemployment benefits where he held himself out as being able to work.").

In terms of the symptoms caused by her mental impairments, as discussed, the ALJ considered Plaintiff's daily activities, medical treatment, social interaction, and treatment results to determine that Plaintiff was not entirely credible.   Tr. 17, 20.   *See* 20 C.F.R. §§ 404.1529(c)(3)(i), (iv)-(v), (vii), 416.929(c)(3)(i), (iv)-(v), (vii) (allowing an ALJ to consider all of these factors in assessing the credibility of alleged symptoms).   The ALJ appropriately may consider Plaintiff's daily activities.   *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *Hennes v. Comm'r of Soc. Sec.*, 130 F. App'x 343, 348-49 (11th Cir. 2005) (holding that "the degree of [plaintiff's] complaints also were belied by her testimony that she could shop for groceries and cook meals with her husband, put clothing in the washing machine, fold and hang clothing, and crochet").

Plaintiff argues the ALJ's finding that Plaintiff was the primary housekeeper and household provider for herself and her disabled husband was a mischaracterization of the record.   Doc. 14 at 13, Tr. 19.   The Court disagrees.   As noted by the Commissioner, the record reveals that Plaintiff's husband was at the time disabled for approximately 20 years, and Plaintiff bathed him, did his laundry and drove him to medical appointments.   Tr. 31, 231-32; *see* Doc. 15 at 15.   Even Plaintiff's primary care physician referred to Plaintiff as her husband's caregiver. Tr. 464.

Credibility determinations, resolving conflicts in the evidence and drawing inferences therefrom are functions of the Commissioner, not the Court.   *Parker v. Colvin*, No. 8:12-cv-1919-T-24-TGW, 2013 WL 3209443, at *2 (citing *Richardson*, 445

F.2d 656 and *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963)).   Instead, the Court's role is limited to determining whether the ALJ's decision is supported by substantial evidence.   To that end, "[t]the question is not . . . whether [the] ALJ could have reasonably credited [the plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it."   *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Here, the ALJ determined that Plaintiff's subjective complaints are not entirely credible, and Plaintiff is not as limited as alleged.   Tr. 19.   As set forth above, the ALJ sufficiently explained his reasons for finding Plaintiff less than entirely credible, and it is not for the Court to reweigh the evidence.   Nor will it disturb a clearly articulated credibility finding that is supported by substantial evidence.   *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987); *Foote*, 67 F.3d at 1562 (same); *Lawson v. Astrue*, No. 8:07-cv-243-T-TGW, 2008 WL 681097, at *2 (M.D. Fla. Mar. 7, 2008) ("It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.") (citing *Grant*, 445 F.2d 656).   The ALJ discussed in detail the specific portions of the record and Plaintiff's testimony that he found were inconsistent or exaggerated, and upon review the Court finds that substantial evidence supports the ALJ's credibility determination.

## V.   Conclusion

Upon review of the record, the undersigned concludes that the ALJ applied the proper legal standards, and her determination that Plaintiff is not disabled is

supported by substantial evidence.   Where, as here, the Commissioner's decision is supported by substantial evidence, the Court must affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the preponderance of the evidence is against the Commissioner's decision.   *Edwards*, 937 F.2d at 584 n.3; *Barnes*, 932 F.2d at 1358.

ACCORDINGLY, it is hereby

**ORDERED:**

1.     The decision of the Commissioner is **AFFIRMED**.

2.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 1st day of July, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record